| | |
|---|---|
| NUVOTRONICS, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>COMPONENTZEE, LLC and MASUD BEROZ,<br><br>        Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

  Defendants ComponentZEE, LLC ("ComponentZEE") and Masud Beroz ("Mr. Beroz"), by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion to Dismiss. For the reasons that follow, the Court should grant Defendants' Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and dismiss Plaintiff Nuvotronics, Inc.'s ("Nuvotronics" or "Plaintiff") Complaint and all causes of action, with prejudice.

## STATEMENT OF THE CASE

  Plaintiff launches this action to seek yet another alternative avenue to procure rights to Defendants' valuable intellectual without paying any consideration. Currently, there is already a pending case before the North Carolina Business Court arising out of Nuvotronics' initial efforts to take Defendants' intellectual property through fraudulent inducements and other misconduct. After choosing to terminate the license and assignment agreements at issue in response to Defendants' state court suit, Nuvotronics now improperly seeks to use this forum to achieve the same objectives by either being added as a "co-inventor" to Mr. Beroz's patent. Plaintiff's causes of action, however, are purely illusory and do not set forth any genuine case or controversy warranting this Court's intervention or declaratory relief sought. After purporting to reassign Mr.

Beroz's provisional application back to Defendants' possession and control, and representing to the Business Court that such "reversal" of Mr. Beroz's earlier assignment rendered his claims in that case moot, Nuvotronics now bases its claims here on a false assertion that it retained at least partial ownership over Mr. Beroz's provisional.

As an alternative to hijacking Defendants' now-issued patent, Nuvotronics asks this Court to invalidate that same patent and declare it unenforceable. Plaintiff's Complaint, however, is devoid of any actual allegation that Defendants have accused Nuvotronics of selling or marketing an infringing product or put Nuvotronics in any reasonable apprehension that such action is imminent. Instead, Nuvotronics relies only on Defendants' refusal to provide Nuvotronics with a free license in the form of a covenant not to sue. As such, Plaintiff has not plead any justiciable case or controversy. The Court should resist Plaintiff's efforts to obtain an improper advisory opinion, and find that it is estopped from making representations to this Court that directly contradict its prior representations to the North Carolina Business Court.

## RELEVANT ALLEGED FACTS

Mr. Beroz is an engineer and inventor of a novel concept and design to solve Coefficient of Thermal Expansion ("CTE") decoupling issues in wafer level packaging of high frequency semiconductor devices. (Compl. ¶ 10.) Varying coefficients amongst different components that make up such devices can be detrimental and even cause them to break. Mr. Beroz's CTE decoupling solution was first described in a provisional patent application he filed with the U.S. Patent & Trademark Office, specifically Application No. 62/327,807 and titled, "Wafer level packaging concept and solution for CTE mismatch issues" ("the '807 Provisional") (*Id.*)

Nuvotronics is a technology company based in Durham with a business objective centered on the manufacture of high frequency and millimeter wave microelectronic components. (Compl.

¶ 8.) Nuvotronics accordingly is in a line of business well suited to benefit from Mr. Beroz's CTE decoupling solution embodied in the '807 Provisional Application. In June 2016, Nuvotronics engaged Mr. Beroz as a consultant for an eight-week period to "provide engineering consulting services, including the development of interconnect and packaging solutions, and other relevant technologies." (*Id.* at ¶ 10.) As part of the Consulting Agreement, Mr. Beroz obviously disclosed his pre-existing intellectual property, including the '807 Provisional. (*Id.*)

By August 2016, Nuvotronics desired to acquire Mr. Beroz's invention and prepared an Assignment agreement that transferred ownership of the '807 Provisional from Mr. Beroz to Nuvotronics (the "Assignment"). (*Id.* at ¶ 11.) Mr. Beroz assigned Nuvotronics his "entire right title and interest" in and to his '807 Provisional and the CTE decoupling solution described therein. (*See* the Assignment, attached hereto as Exhibit A; Compl. ¶ 11.)[1] Nuvotronics also converted Mr. Beroz's status from a consultant to a full-time employee. (Compl. ¶ 12.) Mr. Beroz continued to work with Nuvotronics' other engineers on designs and concepts to address CTE decoupling issues that the company was seeing on its projects. (*Id.*)

Now the owner with the '807 Provisional, Nuvotronics filed U.S. Patent Application No. 15/498,188 ("the '188 App") on April 26, 2017. (Compl. ¶ 13.) Nuvotronics' application listed Mr. Beroz as the first named inventor and was titled, "CTE Compensation for Wafer-Level and Chip-Scale Packages and Assemblies." Nuvotronics' application was based on and incorporated the entire contents of Mr. Beroz's '807 Provisional Application, and purported to claim the benefit of the '807 Provisional's filing date exactly one year prior. (*Id.*)

---

[1] This Court may consider this, and other exhibits attached to this brief, that were not attached to Plaintiff's complaint, without converting the motion to dismiss into one for summary judgment so long as the complaint relied on the heavily upon the terms and effect of the document and there is no dispute about the documents authenticity. *See e.g.*, *Goines v. Valley Community Services Bd.*, 822 F.2d 159, 166 (4th Cir. 2016).

On July 17, 2017, two days prior to abruptly terminating Mr. Beroz's employment, Nuvotronics filed a subsequent patent application, titled the same as its earlier one, incorporating the entirety off the '807 Provisional Application, and claiming the benefit of its filing date (the "'531 App."). (*Id.* at ¶ 14.) Following his termination, Mr. Beroz contacted Nuvotronics through counsel to demand reassignment of the '807 Provisional back to Mr. Beroz, along with the termination of a license agreement Mr. Beroz provided Nuvotronics covering other related intellectual property. (*Id.* at ¶ 18.)

Nuvotronics refused, and on November 16, 2017, Mr. Beroz and ComponentZEE filed suit in Wake County Superior Court against Nuvotronics arising out of its fraudulent inducement and other unfair and deceptive acts in connection with the Assignment and related License Agreement (Docket No. 17-CVS-13984). This suit is presently pending before the North Carolina Business Court (hereinafter, the "NC Lawsuit").

After being served with the NC Lawsuit, on December 6, 2017, Nuvotronics filed an amendment to its '531 App. purporting to "remove all material that related solely to the '807 [Provisional], and disclaimed priority to the '807 [Provisional]." Nuvotronics thereafter provided Mr. Beroz with an assignment to convey the '807 Provisional back to Mr. Beroz (hereinafter, the "Reassignment," attached hereto as Exhibit B). (Compl. ¶¶ 18-19.) As expressly set forth in the Reassignment, Nuvotronics assigned the "entire right, title and interest for, to and within the United States and all foreign countries, in and to [the '807 Provisional]" back to Mr. Beroz. (Ex. B.) Furthermore, the Nuvotronics represented that it would not execute any agreement that would conflict with the terms of the Assignment, and that it would execute "any further papers and do such other acts and things as may be necessary and proper to vest full title of the Application in [Mr. Beroz]." (*Id.*) Notably, the Reassignment does not reference any reservation of right or

Nuvotronics' continued interest in continuations, continuations-in-part, divisionals, or to claims of priority on behalf of Nuvotronics. Instead, similar to the original assignment to Mr. Beroz, it conveyed the "entire right, title and interest" in the '807 Provisional. (*Id.*)

Remarkably, while referencing only some communications with the Patent Office, Nuvotronics omits that on January 23, 2019 (about a month prior to this lawsuit), Nuvotronics submitted a further request for continued examination of its '531 App. wherein they asked the Patent Office to amend its previous <u>disclaimer</u> of priority through the '807 Provisional, to <u>reinstate</u> such priority.

Indeed, Nuvotronics confirmed the foregoing in filings with the court in the NC Lawsuit. Although Nuvotronics here maintains it reserved rights to filing continuations and to claim priority in the '807 Provisional (*Id.* at ¶ 19.) in the case at bar, in the state court action it represented to that court that the Reassignment "reversed the assignment of the Provisional under the Patent Assignment [from Mr. Beroz]." (*See* Exhibit C attached hereto.) Therein, Nuvotronics relies on this contradictory characterization to bar Defendants' claims in the NC Lawsuit as moot. (*Id.*)

On February 13, 2018 ComponentZEE filed a continuation of the '531 App. that derived from Mr. Beroz's '807 Provisional, namely U.S. Patent Application No. 15/895,794 ("the '794 App") and claimed priority in the '807 Provisional. (Compl. ¶ 20.) Ultimately, the '794 App issued as U.S. Patent No. 10,128,601 (the '601 Patent), which lists ComponentZEE as the assignee on the face of the '601 Patent. (*Id.* at ¶ 30.)

Significantly, Nuvotronics' Complaint does not identify any actual allegations of infringement from either ComponentZEE or Mr. Beroz. (Compl. ¶ 40.) Indeed, Nuvotronics represented in the NC Lawsuit that it "has not incorporated the Pre-Existing IP into any of its products or services delivered to any customer, and has not realized any profit as a direct result of

the License Agreement, the Patent Assignment, or the technology and intellectual property covered by either." (Ex. C at ¶ 2.) Instead, Nuvotronics merely alleges that Mr. Beroz refused to grant a blanket covenant not to sue on the '601 Patent. (Compl. ¶ 40.) Although Nuvotronics also alleges certain demands Mr. Beroz has made concerning Nuvotronics' prosecution of the '531 App. – nothing in these allegations can be reasonably construed as a threat or accusation of infringement of the '601 Patent.

## ARGUMENT

I. **Legal Standard.**

The Federal Rules of Civil Procedure provide that "[i]f the court determines at any time that it lack subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Accordingly, the purpose of a Rule 12(b)(1) motion is to test the basis of subject matter jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Ultimately, "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)). Furthermore, the "trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.*

In evaluating subject matter jurisdiction in an action for declaratory judgment, courts have long recognized that they have "neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of the litigants in the case before them.'" *Presier v. Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334 (1975 ) (citing *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971)). Instead, the Court's judgments "must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461, 464 (1937).

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *DeSole v. United States*, 947 F.2d 1169, 1178 (4th Cir. 1991). The question on a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted. *Scheur v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). If it appears that a plaintiff is not entitled to relief under the stated facts, dismissal is proper. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).

While a court ruling on a motion under Rule 12(b)(6) must accept all well-pleaded factual allegations as true, and must construe the facts in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, as stated by the Supreme Court, a well-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Moreover, a court reviewing a motion under Rule 12(b)(6) is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Jefferson v. Sch. Bd. of City of Norfolk*, 452 F. App'x 356, 357 (4th Cir. 2011) (citing *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002)).

Accordingly, even when accepting all well-pleaded factual allegations as true, and construing the facts in the light most favorable to the non-moving party, the Court should dismiss Nuvotronics claims on three grounds. First, Plaintiff fails to demonstrate a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the

issuance of a declaratory judgment. Second, Nuvotronics should be judicially estopped from maintaining opposite positions on the impact of the Assignment of the '807 Provisional in the NC Lawsuit and here in this Court, and from making assertions contrary to its filings with the Patent Office. Third, Nuvotronics' reinterpretation of the language in the Reassignment of the '807 Provisional to create some sort of more limited reassignment to Mr. Beroz is clearly erroneous based on a plain reading of the terms on such document.

II. **The Court Should Dismiss Plaintiff's Claims For Declaratory Judgment On Validity And Enforceability Of The '601 Patent On Standing Grounds Because Plaintiff Does Not Allege Defendants Made An Actual Accusation Or Threat Of Infringement.**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A plaintiff seeking a declaratory judgment bears the burden of demonstrating that a case of actual controversy existed at the time of filing. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012). This requires a showing of injury-in-fact, connection between the challenged conduct and the injury, and redressability by the requested remedy. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04, 118 S. Ct. 1003, (1998).

Furthermore, the existence of a patent, without more, does not create a case of actual controversy. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) ("[J]urisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee.") (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007)).

The Supreme Court addressed the case-or-controversy requirement for declaratory judgments in the patent infringement context in *MedImmune, Inc. v. Genetech, Inc.* 549 U.S. 118,

127 S. Ct. 764 (2007). Specifically, in *MedImmune*, the Supreme Court noted that the standard for determining whether a declaratory judgment action satisfied the case or controversy requirement involved an evaluation of "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510 (1941). *Id*. at 118, 127 S. Ct. at 765 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510 (1941). By way of example, in a prior patent dispute cited favorably by *MedImmune*, the Supreme Court recognized that "[t]o hold a patent valid if it is not infringed is to decide a hypothetical case." 319 U.S. 359, 363, 63 S. Ct. 1115, 1117 (1943).

Here, Nuvotronics does not make any allegation that Defendants have accused Nuvotronics of infringement of the '601 Patent. Nuvotronics does not allege that Mr. Beroz made any demand for payment on a license agreement.[2] Instead, Nuvotronics bases standing merely on its assertion that Defendants failed to grant Nuvotronics a covenant not to sue. It is well-settled, however, that this contention (even if assumed to be true) is insufficient to satisfy the case or controversy standard under the Declaratory Judgment Act.

The Federal Circuit Court of Appeals recently rejected a similar attempt by a plaintiff who filed a declaratory judgment action to preemptively challenge the validity and enforceability of a defending party's patent. *AIDS Healthcare Foundation, Inc. v. Gilead Sciences, Inc.*, 890 F.3d 986, 994-95 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 415 (2018). In *AIDS Healthcare*, the Court

---

[2] Furthermore, Nuvotronics does not allege in its Complaint that it is selling or planning to sell any actual product or device that Defendants have accused of infringing the '601 Patent. By contrast, Plaintiff has repeatedly represented to the North Carolina Business Court that "Nuvotronics has not incorporated the Pre-Existing IP into any of its products or services delivered to any customer, and has not realized any profit as a direct result of the License Agreement, the Patent Assignment, or the technology and intellectual property covered by either." (Ex. C at Ex. 36.1).

4827-2908-0980, v. 3

held that the defendant's refusal to provide the plaintiff with a covenant not to sue infringers did not create a justiciable case or controversy because "there was no affirmative act by the patentee to assert patent rights against [the plaintiff] for any present or planned activity." *Id.* (citing *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993)). The Federal Circuit went on to reason that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.* (quoting *SanDisk*, 480 F.3d at 1380–81).

"The absence of a covenant not to sue, even had it been timely requested and denied, does not here shift the balance to create a controversy of the immediacy and reality needed to support declaratory jurisdiction." *Id.; see also Prasco*, 537 F.3d at 1341 ("[T]hough a defendant's failure to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to create an actual controversy—some affirmative actions by the defendant will also generally be necessary.")[3]

Accordingly, Nuvotronics does not have legal standing to seek a declaratory judgment from this Court on the validity and enforceability of the '601 Patent because it has not alleged an existing case or controversy between the parties. Consequently, the Court should dismiss Plaintiff's claim under Counts II and III for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

---

[3] Nuvotronics also appears to rely on certain alleged threats by Defendants' patent counsel regarding Nuvotronics' prosecution of its '531 App. The Court should find these allegations cannot reasonably be interpreted to be connected to any threats of infringement on the '601 Patent that would create a genuine case or controversy under the Declaratory Judgment Act.

### III. The Court Should Dismiss Plaintiff's Claim To Be Added As A Co-Inventor To The '601 Patent.

Plaintiff's attempt in Count I for declaratory relief be added as a co-inventor on the '601 Patent is also premised on an illusory conflict. In this case, Nuvotronics' contention that it maintains exclusive rights to continuation applications on the '807 Provisional is based on a false interpretation of its Reassignment of the '807 Provisional to Mr. Beroz, which Nuvotronics argues is more limited in scope that the original assignment of the application from Mr. Beroz. Not only is this interpretation unreasonable from a plain reading of the text of the reassignment, but it is directly contrary to the position it took on the Reassignment in the NC Lawsuit. Under the doctrine of judicial estoppel and the Court's plain reading of the Reassignment, the Court should refuse to entertain Count I further.

### A. The doctrine of judicial estoppel bars Plaintiff from taking a position in this Court that is directly contrary to its prior representations to the North Carolina Business Court.

Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. *United Virginia Bank v. B.F. Saul Real Estate Investment Trust,* 641 F.2d 185, 190 (4th Cir. 1981). The purpose of the doctrine is to prevent a party "from playing 'fast and loose' with the courts, and to protect the essential integrity of the judicial process." *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir. 1982). The vice which judicial estoppel prevents is the cold manipulation of the courts to the detriment of the public interest. *See e.g. DeGuiseppe v. Village of Bellwood,* 68 F.3d 187, 191-92 (7th Cir. 1995) ("[C]ourts are under no compulsion to heed the shifting theories of 'chameleonic litigants"). As the Fourth Circuit has previously observed, the doctrine is invoked to prevent a party from "playing fast and loose with the courts," from "blowing hot and cold as the occasion demands," or from attempting "to mislead the [courts] to gain unfair advantage." *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192,

196-197 (4th Cir. 1998) ("Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefiting itself by maintaining mutually inconsistent positions regarding a particular situation.") As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances. *Id.*

Three elements must be satisfied before judicial estoppel will be applied. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir. 1996). The position at issue must be one of fact as opposed to one of law or legal theory. *Id.* "Second, the prior inconsistent position must have been accepted by the court." *Id.* Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." *Tenneco Chems., Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 665 (4th Cir. 1982).

Plaintiff's declaratory judgment claim to add itself as an inventor named on the '601 Patent stems from its present contention that its reassignment of the '807 Provisional back to Mr. Beroz "did not convey any rights to continuations, continuations-in-part, divisionals, or the right to claim priority to the '807 Patent." (Compl. ¶19.) Ignoring for a moment that this interpretation of the Assignment is in direct conflict with the plain language of the Assignment itself, which assigned the "entire" right and title in the provisional application, Nuvotronics current interpretation conflicts with an early representation made to, and accepted by, the court in the NC Lawsuit to successfully amend its answer after executing the Reassignment. To support a mootness defense on claims Mr. Beroz brought regarding the original Assignment, Nuvotronics represented to the North Carolina Business Court that the Reassignment of the '807 patent back to Mr. Beroz "reversed the assignment of the Provisional under the Patent Assignment."

12

Case 5:19-cv-00072-FL   Document 17   Filed 04/26/19   Page 12 of 15

4827-2908-0980, v. 3

If the Reassignment truly "reversed" Mr. Beroz's original transfer of the '807 Provisional, which Defendants agree is accurate, than such reassignment must also include exclusive rights to file continuation applications, continuations-in-part, divisionals, or the right to claim priority to the '807 Patent.

Accordingly, Plaintiff is maintaining a position that is inconsistent with its prior position to take advantage of whatever argument suits its purposes in each forum. In the state court action, Plaintiff's interpretation of the scope of the Reassignment is designed to support a mootness defense. Here, however, they do an about-face to narrow the scope of the Reassignment as some basis to assert they should share inventor rights in Defendants' '601 Patent that validly claimed priority to the '807 Provisional's filing date. Such positions are in complete conflict with one another.

Consequently, the Court should not permit Plaintiff to assert a contrary position on the scope of the Reassignment. Otherwise, Nuvotronics would gain an unfair advantage and create a situation where the scope of the Reassignment has two different parameters. Accordingly, the Court should dismiss Plaintiff's declaratory judgment claim in Count I under the doctrine of judicial estoppel.

### B. Plaintiff's narrowed scope of the Reassignment before this Court conflicts with the plain language of the agreement itself.

Alternatively, this Court should reject Nuvotronics' tortured characterization of the narrowed scope of rights under the '807 Provisional reassigned back to Mr. Beroz as a matter of law based on a plain reading of the terms of that assignment. This Court has recognizes that under North Carolina law, "[w]hen the parties use clear and unambiguous terms, such contracts can be interpreted by the court as a matter of law." *Abbington SPE, LLC v. U.S. Bank, National*

*Association*, 352 F. Supp. 3d 508, 516 (E.D.N.C. 2016) (quoting *Robertson v. Hartman*, 90 N.C. App. 250, 252, 368 S.E.2d 199, 200 (1988).

Here, Nuvotronics assigned its "entire right, title and interest for, to and within the United States and all foreign countries, in and to the ['807 Provisional]" back to Mr. Beroz. One cannot construe the transfer of the entire right, title and interest in and to the '807 Provisional to not also convey rights to file continuations, continuations-in-part, divisionals or to claim priority to the '807 Provisional. The Reassignment itself does not expressly state that Nuvotronics retained <u>any</u> interest connected to the '807 Provisional, much less reserve or exclude from the transfer the specific rights referenced in Paragraph 19 of its Complaint. Nuvotronics' proposed interpretation of the Reassignment would require the Court to adopt either a novel definition of "entire" or manufacture a new origin for the allegedly retained rights so that they are not rights or interests in and to the '807 Provisional that Mr. Beroz originally assigned.

Indeed, the language of the Reassignment mimics that in the original Assignment. (*Compare* Exs. A and B.) Both conveyed the "entire right, title and interest" in the '807 Provisional. It is of no consequence that the original assignment added that such "entire right, title and interest" also "include[ed]" the right the file continuations, to claim priority to the '807 Provisional. By using the word "including," the parties necessarily meant that such rights were part of and subsumed by the "entire right, title and interest" in the '807 Provisional.

Consequently, the Plaintiff's claim to be added as a co-inventor to the '601 Patent should be dismissed for failure to state a claim upon which relief can be granted and lack of a genuine case or controversy as it is premised on a clearly incorrect interpretation of the Assignment of the '807 App back to Mr. Beroz.

## CONCLUSION

Based on the foregoing reasons, the Court should dismiss Plaintiff's Complaint and all causes of action, with prejudice.

This the 26th day of April, 2019.

        Respectfully submitted,

        /s/ Joshua M. Hiller
        /s/Joshua Hiller / NC Bar No. 39010
        Cranfill Sumner & Hartzog, LLP
        P.O. Box 27808
        Raleigh, NC  27611-7808
        T: 919.828.5100
        F: 919.863.3423
        jhiller@cshlaw.com
        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification to the counsel of record indicated on the case docket.

        /s/ Joshua M. Hiller
        Joshua M. Hiller